6859

## NATIONAL LIGHT AND THORIUM CO. v. ALEXANDER.

1. REAL PROPERTY—MINES—LICENSE.—An agreement to *sell* by sufficient *deed* the *mineral and mining rights* of land, speaking of the buyer as *purchaser*, and binding the *heirs* and *assigns* of the respective parties, is not a license revocable at will, but confers on the purchaser an interest in land which he may assign.

2. LEASE—IBID.—SPECIFIC PERFORMANCE.—An agreement not specifying when the purchaser of mineral rights shall mine and what quantities, where the sole compensation to lessor is a share of what is produced, is not lacking in mutuality. These things will be implied and lessee may be required to mine such quantities, within such time, as was within the reasonable contemplation of the parties. Such agreement may be enforced by specific performance.

Before GAGE, J., Greenville, July, 1907.   Reversed.

Action by National Light and Thorium Company against J. E. Alexander. From judgment for defendant, plaintiff appeals.

Messrs. *Sirrine & Charles,* for appellant, cite: *There is sufficient consideration for the contract:* Rich. Eq. Cas., 15; Clarkson Con., Sec. 33. *The court will require specific performance of a contract in writing, signed, sealed and delivered:* 57 S. C., 559; Wat. Spec. Rev., Secs. 2, 16, 19; 3 S. C., 168; 26 Ency., 120, 121, 87, 105; 49 L. R. A., 497; 60 S. C., 440; 48 S. C., 175; 69 S. C., 87; 18 Ency., 603; 145 U. S., 459; 2 Pom. Eq. Jur., Sec. 965; 24 Ency., 647; 1 Rich., 106; 93 U. S., 62; Tiff. on Real Prop., Secs. 222. 340; 8 So. R., 368; 54 N. W. R., 59.

Messrs. *J. C. Jeffries and J. J. McSwain,* contra. *Mr. McSwain* cites: *Contract confers a mere license:* 18 Ency., 170; 3 Kent., 452; 29 N. J. Eq., 229; 93 Am. D., 732; 51 L. R. A., 779; 54 Am. D., 506; 56 Am. D., 202; 2 Par. on Con., 512; 18 L. R. A., 482; 23 S. C., 16; Tied. on Real Prop., Sec. 652; 16 Ency., 358-9, 363; 27 Cyc., 690, 743; 21 S. E., 480; 3 S. C., 168; 33 Ark., 294; 11 Ency., 164; 22 Cyc., 851; 61 Am. St. R., 436; 90 Am. St. R., 627; 27 Am. St. R., 173; 33 N. E. R., 27; 49 N. E. R., 723; 54 S. C., 439; 34 S. E. R., 924; 99 U. S., 191. *The contract not exclusive:* 77 U. S., 363. *Equity will not require specific performance of such a contract:* 26 Ency., 19, 95; 32 S. C., 203; 41 S. C., 354; Story Eq., Jur., Sec. 742-4; 53 S. C., 512; 41 S. C., 349; 32 S. C., 203; 15 N. J. Eq., 266; 10 Wall., 339; 68 Am. St. R., 760; 28 S. C., 418; 20 Ency., 28-31; 41 Am. R., 720; 43 Am. R., 239; 34 S. E., 924; 22 Cyc., 850; 40 L. R. A., 98; 48 At. R., 1052; 59 N. E. R., 239; 47 L. R. A., 334; 55 L. R. A., 328; 59 Am. D., 749; 3 Am. St. R., 758; 4 L. R. A., 107; 77 U. S., 339; 56 Am. St. R., 892; 6 L. R. A. (N. S.), 391; 17 Am. R., 692.

April 11, 1908. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for specific per-
formance and for damages. The case was tried before a
jury. At the conclusion of the defendant's testimony the
plaintiff withdrew its claim for damages, and asked the
Court to pass an order enjoining the defendant from inter-
fering with the plaintiff, in exercising the rights and privi-
leges conferred by the contract, and requiring the defendant
to perform specifically his part of the contract, and to
account for the monazite mined by him after the agreement
had been executed.

The following is a copy of the agreement: "This agree-
ment, made and entered into this the 16th day of December,
1904, by and between J. E. Alexander, of Greenville County,
South Carolina, party of the first part, and George L.
English, of Shelby, North Carolina, party of the second
part.

"Witnesseth, that for and in consideration of the sum of
one dollar, paid by each of the parties hereto to the other,
receipt of which is hereby acknowledged, and of the further
covenants, agreements and considerations hereinafter men-
tioned, it is agreed as follows:

First. "The said Alexander agrees to sell to the said
English by good and sufficient deed with the usual cove-
nants and warranty, free of all encumbrances, the mineral
and mining rights of his land in Grove Township, Green-
ville County, South Carolina, adjoining lands of J. A. Alex-
ander, A. L. Garrison, E. C. Garrison and others, containing
...... acres, more or less, for the sum of seventy-five
($75.00) dollars.

Second. "The said English agrees to buy the said mineral
and mining rights, and to pay for the same upon the delivery
of the said deed and the proper release of the said mineral
rights, from the lien of the mortgage now outstanding
against the said land.

Third. "Pending the execution and delivery of the said
deed to said English, said Alexander agrees to permit said

English to take and remove from said lands such monazite sand as he may mine thereon, and hereby grants to said English the right to mine said sand and such privileges as are usually granted in connection with such mining.

Fourth. "The said English shall have the right to take possession of the sand mined recently on the said land by W. G. and T. N. Adair without payment to the said Alexander of any royalty thereon, said sand to be regarded as a part of that to which he is entitled as the purchaser of the said mineral and mining rights. But, in the event of the said Alexander being unable to secure the release of the mortgage lien on the said mineral and mining rights, then he agrees to lease the said rights to the said English for the term of ten years, and accept in full payment for the said rights a royalty of fifteen dollars per ton of pure monazite removed from the said land, and the said sand recently mined, being in that event subject to the same royalty.

Fifth. "Said English agrees to lease said mineral and mining rights on the above named terms, and to pay the said royalties in the event of said Alexander being unable to secure the release of the said mortgage lien.

Sixth. "This agreement shall be binding on the heirs, executors, administrators and assigns of the parties hereto.

"In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written.

"J. E. ALEXANDER.
"GEORGE L. ENGLISH (L. S.)

"Signed, sealed and delivered in the presence of
"CHAS. F. WEAVER.
"W. E. WILLIMON."

The agreement was duly probated and recorded.

In his decree refusing specific performance of the contract, his Honor, the presiding judge, stated that he was satisfied the allegations of the answer charging plaintiff with fraud were not proven.

It seems that the principal reason why the presiding judge refused to decree specific performance was that the contract was lacking in mutuality.

The propositions upon which defendant relied are thus stated in the argument of his attorneys:

"(1) That the facts and circumstances do not warrant a decree for specific performance   (2) That the plaintiff has suffered no damage, and will in the future suffer no damage because of defendant's conduct.   (3) That the agreement to give the lease is a mere executory license, which might be revoked at any time.   (4) That the contract does not purport to give plaintiff the exclusive right to mine on land, and that an injunction restraining defendant from doing so would be in excess of the scope of the contract.   (5) That the contract lacks mutuality to justify specific performance, because there is no obligation on plaintiff to begin, or continue, to mine on the land."

The first question that will be considered is whether the agreement conferred upon the plaintiff a mere license subject to be revoked at any time by the defendant.

Alexander agreed to *sell* to English, by good and sufficient *deed,* with the usual covenants of *warranty,* free of all *encumbrances,* the *mineral* and *mining rights* of his land. English agreed to *buy* and *pay* for those rights upon the delivery of the *deed.*

It will be observed that the language in the 1st and 2d clauses is quite different from that in the 3d clause, in which Alexander agreed, *pending* the delivery of the deed, to *permit* English to remove the monazite sand from the land.

In the 4th clause English is recognized as the *purchaser* of the mineral and mining rights, and Alexander agrees to *lease* the mineral and mining rights.

In the sixth clause it is agreed that said writing shall be binding on the *heirs,* executors, administrators and *assigns* of the respective parties.

The words which we have italicized are inconsistent with a revocable license and show that if the executory agreement is carried into effect by the execution of a deed it will confer upon the plaintiff an interest in the land itself which could be assigned.   *McBee* v. *Loftis,* 1 Strob. Eq., 90; *Knotts* v. *Hydrick,* 12 Rich., 314; *Davis* v. *Reynolds,* 77 S. C., 255; *Wilson* v. *Alderman, post,* 106, 27 Cyc., 689 and 690.

The next question to be determined is whether the agreement was lacking in mutuality.

The grounds upon which the presiding judge ruled that the agreement was lacking in mutuality were that the plaintiff was not bound to operate the mine, nor to take out any specific quantity of ore.   Even when there are no express words to that effect they will be implied, and the lessee required to operate the mine within a reasonable time, and to dig such a quantity of ore as it must be inferred was within the reasonable contemplation of the parties.   "Where by the terms of the lease the sole compensation to the lessor is a share of what is produced there is an implied covenant for diligent search and operation." 20 Ency. of Law, 780-1.

The following authorities show that specific performance is an appropriate remedy in this case:   *Hammond* v. *Foreman,* 48 S. C., 175, 26 S. E., 212; *Campbell* v. *Chemical Co.,* 68 S. C., 440, 47 S. E., 716; 26 Ency. of Law, 120-1.

These views practically dispose of all the questions.

It is the judgment of this Court that the judgment of the Circuit Court be reversed.